OPINION *Page 2 
{¶ 1} Defendant-Appellant, Charles Wiley ("Charles") brings this appeal from the judgment of the Court of Common Pleas of Marion County, Family division, denying Charles' motion to dismiss the registration of a California spousal support order in favor of plaintiff-appellee Peggy Wiley ("Peggy").
 {¶ 2} On January 27, 1997, Charles was ordered by the Superior Court of California in Madera County to pay spousal support to Peggy in the amount of one-thousand dollars per month "until [Peggy's] remarriage or death, or further order of the court." California Order, 2. The last payment of spousal support was made in March, 1998. At that time, Charles lost his job and moved to New Mexico from California. Charles notified his attorney of the move and left a forwarding address with the post office. However, Charles did not notify either the court or Peggy of his new address. No attempt to have the spousal support modified was made. Instead, Charles decided that he did not have to pay it anymore because both he and Peggy had moved out of California.
 {¶ 3} After the payments stopped, Peggy began contacting attorneys in an attempt to enforce the California order. She was unable to locate Charles. She later determined that he was residing in Oklahoma through an internet search. At that time, Peggy contacted the Ohio Child Support Enforcement Agency who attempted to enforce the order in Oklahoma. Eventually Peggy was notified that *Page 3 
Oklahoma could not process the request because no children were involved. By letter of transmittal dated January 16, 2006, Peggy requested an Ohio registration of the California spousal support order and included her sworn statement seeking registration. On February 1, 2006, the trial court issued its Notice of Registration of Order pursuant to R.C 3115.42. Pursuant to R.C. 3115.43, and within 20 days of receiving service of the Notice of Registration of Order, Charles filed a motion to vacate the registered order on March 27, 2006. The trial court set a hearing date of April 24, 2006. On April 21, 2006, Charles filed a motion to continue, which was granted by the trial court. The hearing on the motion was held on May 31, 2006. At the hearing, Charles asserted the defense of laches and testified that he was currently residing in Yukon, Oklahoma; that, at the time of his divorce from Peggy, both he and Peggy were residents of California; that the last spousal support payment to Peggy was taken out of his paycheck in March 1998; that, at the time of his last spousal support payment, his employer's contract with its client was nearly complete and he was experiencing serious health problems; that he then moved in with his parents in New Mexico, but eventually relocated to Oklahoma for a job; and, that he purchased a home in Oklahoma in 1999 and moved from his initial Oklahoma residence into the home.
 {¶ 4} Charles continued that, when he left California for New Mexico, he believed he was not obligated to continue paying spousal support to Peggy since *Page 4 
neither of them resided in California; that he did not make enough money in his new job to make the spousal support payments; that he would have tried to get the spousal support payment amount reduced if he had known that he was still obligated to pay spousal support; that he left a forwarding address when he moved to New Mexico, when he moved to Oklahoma, and when he moved into his home in Oklahoma; that he was not trying to hide from anyone; that, at his Oklahoma residence, he received a letter from Peggy's former divorce attorney notifying him that the attorney was no longer Peggy's attorney of record; and, that he received a letter at his Oklahoma residence from his divorce attorney notifying him that the attorney was no longer his attorney of record.
 {¶ 5} Charles also testified that he did not receive anything from the California court after he left the state; that he did not notify the California court of his new address; that he did not think anyone would have difficulty finding him because he left forwarding addresses and had utilities in his name; that he informed his divorce attorney that he was leaving California; that his family knew where he was residing; that his daughter had contact with Peggy after he moved from California, but eventually she and Peggy had a falling out and discontinued communication; that he continues to have health problems and financial difficulties; and, that if Peggy had tried to enforce the order sooner he would have tried to get the amount reduced or a limited duration. *Page 5 
 {¶ 6} On cross-examination, Charles admitted that he did not consult an attorney as to whether he was still obligated to pay spousal support upon leaving California; that he did not attempt to modify the order; that he did not ask his former attorney about his obligation under the order before he left California; that he did not notify Peggy about his health problems after he left California; but, that Peggy knew about his health problems before he left California.
 {¶ 7} Peggy testified that she left California in August 1996, while the divorce was pending; that she communicated with Charles' daughter a few times after the spousal support payments had ceased; that she and Charles' daughter had a disagreement and ceased communicating in 1998; that Charles' daughter would not have given Charles' address to her; that she did not ask Charles' daughter for Charles' address; that, when the spousal support payments ceased, she contacted Charles' former employer and learned that he no longer worked for them; that she contacted an Ohio attorney, who advised her to contact a California attorney; that she contacted her former divorce attorney in California, who could no longer assist her because the attorney had become a judge; that she contacted the California court system and received a packet with a list of attorneys, but did not know any of them; that she consulted another Ohio attorney, who also advised her to find a California attorney; but, that she did not contact any California attorneys because *Page 6 
she did not have the money to go to California, did not know any of the California attorneys, and believed that something could be done in Ohio.
 {¶ 8} Peggy continued that she first consulted an attorney about the situation in 1999; that she had no contact with Charles when he lived in New Mexico; that she did not know he moved to New Mexico; that she did not know Charles lived in Oklahoma until she did an internet search and found his address; that she contacted the Ohio Child Support Enforcement Agency but, after three years of attempts, it could not do anything for her because Oklahoma refused to process her claim; and, that she did not believe she unreasonably delayed her attempt to enforce the order.
 {¶ 9} On cross-examination, Peggy admitted that she never tried to contact Charles after he left California; that, even though two different Ohio attorneys advised her to consult a California attorney, she did not do so because she lived in Ohio, wanted to pursue the spousal support payments from Ohio, and did not think it was necessary "to call a bunch of attorneys in California"; that she conducted two internet searches for Charles' address during the past year, but had to pay for them; and, that she did not conduct an internet search sooner because no one advised her to do so.
 {¶ 10} On June 14, 2006, the Marion County court denied Charles' motion to vacate the registration of the order, providing: *Page 7 
 The Court in its research of this case relies upon the Court of Appeals from the Fifth District in Unger v. Unger, (2004) Ohio 5883 (sic). The Unger Court states that in order to invoke the equitable jurisdiction of the trial Court in arguing laches, one must come to equity with clean hands. [Charles] lacks this prerequisite. He voluntarily chose to disregard the trial Courts (sic) order. Obedience to the order would had (sic) protected him from the accidents of nature and unfounded claims. By so volunteering to disobey the Court order, he became the architect of his own "demise" and must now suffer the consequences of that chose (sic.). See Unger at 14.
June 14, 2006 Entry, 4-5. Additionally, the Marion County court found that Charles "deliberately ignored the order"; that "his argument that he believed because neither he nor [Peggy] continued to reside in the State of California made the order a nullity [was] not credible"; and, that he was "not materially prejudiced by [Peggy's] delay in asserting her rights under the * * * order." Id. at 5.
 {¶ 11} Charles appeals from this order and raises the following assignment of error.
 The trial court erred to the prejudice of [Charles] by denying his motion to vacate the registration of the California order.
 {¶ 12} Charles asserts in his assignment of error that the Marion County court erred by denying his motion to vacate the registration of the order. Specifically, Charles contends that Peggy's assertion of her rights under the order was barred by the doctrine of laches and that the Marion County court abused its discretion by finding otherwise. R.C.3115.39 allows a party to register a support order or income withholding order issued by another state in Ohio if certain *Page 8 
requirements are met. Under R.C. 3115.43, a nonregistering party may contest the validity or enforcement of a registered order, or attempt to vacate the registration. In doing so, the nonregistering party bears the burden of proving one of several enumerated defenses under R.C. 3115.44, including "a defense under the law of this state to the remedy sought." R.C. 3115.44(A)(5). Here, Charles sought to vacate the order based upon the defense of laches.
 {¶ 13} A trial court's decision regarding application of the doctrine of laches will not be reversed on appeal absent an abuse of discretion.State, o/b/o Genessee Cty. v. Christenson (Nov. 9, 1999), Delaware App. No. 99CA04018, unreported (citing Payne v. Cartee (1996),111 Ohio App.3d 580, 590, 676 N.E.2d 946). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 14} Laches is an equitable doctrine and is defined as "`an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" Connin v.Bailey (1984), 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (citing Smith v.Smith (1957), 107 Ohio App. 440, 443-44, 146 N.E.2d 454). However, "`[d]elay in asserting a right does not of itself *Page 9 
constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting the claim.'" Connin, supra at 35-36 (quotingSmith v. Smith (1959),168 Ohio St. 447, 156 N.E.2d 113, paragraph three of the syllabus). Thus, in order to prevail under the doctrine of laches, the party asserting it must demonstrate two elements: (1) the opposing party unreasonably delayed in asserting the claim, and (2) the delay materially prejudiced the party asserting the doctrine of laches.Christenson, supra.
 {¶ 15} However, in order to invoke the equitable doctrine of laches, "it is fundamental that he who comes into equity must come with clean hands." Christman v. Christman (1960), 171 Ohio St. 152, 154,168 N.E.2d 153. This maxim "requires only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject-matter of his suit."Kinner v. Lake Shore Michigan S Ry. Co. (1904), 69 Ohio St. 339,69 N.E. 2d 614, paragraph one of the syllabus. See, also, Goldberger v.Bexley Properties (1983), 5 Ohio St.3d 82, 85, 448 N.E.2d 1380;North Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984),16 Ohio App.3d 342, 476 N.E.2d 388, paragraph two of the syllabus (the "clean hands" doctrine concerns grossly inequitable behavior in the underlying transaction which is the subject matter of the suit); Ohio EngineeringCo. v. *Page 10 Hardin Quarry Co. (Sept.12, 1980), Hardin App. No. 6-80-2, unreported (quoting Ohio Jur. 2d p. 148, Equity, para. 70 (a party in equity "who founds his cause upon a transaction in respect of which he is himself guilty of unconscionable conduct cannot have any relief whatsoever, for he is personally barred.")). Thus, for the doctrine of unclean hands to apply, the offending conduct must constitute reprehensible, grossly inequitable, or unconscionable conduct, rather than mere negligence, ignorance, or inappropriateness.
 {¶ 16} Here, the Marion County court, while making a finding of a lack of material prejudice, never decided the matter on the doctrine of laches, finding instead that Charles had unclean hands because he voluntarily and deliberately ignored the order and so could not invoke the equitable doctrine of laches. In doing so, the Marion County court relied upon Unger v. Unger, 5th Dist. No. 2003CA00356, 2004-Ohio-5883, wherein the defendant-appellant husband and plaintiff-appellee wife divorced in Ohio and the trial court ordered the appellant to pay monthly child and spousal support to the appellee. As part of the support order, the husband was required to submit the support payments to the Stark County, Ohio, Bureau of Support. Thereafter, the appellant moved to Florida, where he continued to submit payments to the Bureau of Support.
 {¶ 17} Subsequently, the appellant moved to California and began sending the support payments directly to the appellee. Fifteen years later, both parties *Page 11 
moved to determine child support arrears and both the Ohio magistrate and trial court found that appellant was in arrears for both child and spousal support. On appeal, the appellant asserted the doctrine of laches in defense. The Fifth District found that the doctrine of unclean hands barred the appellant from asserting the doctrine of laches because he deliberately disobeyed the support order by sending payments directly to the appellee instead of to the Bureau of Support and because the appellee indicated that the appellant did so after moving to California in order to avoid an increase in his support obligation under California law. Unger, 2004-Ohio-5883 at ¶¶ 13-14.
 {¶ 18} In the case sub judice, Charles alleged specific reasons — his belief that he no longer had to pay since neither he nor Peggy resided in California, his health problems, and financial difficulties — for his failure to pay spousal support. The trial court found his testimony, that he believed that he no longer had to pay, to be "not credible," in effect determining that Charles voluntarily ignored a valid, existing and continuing court order.
 {¶ 19} Whether Charles' conduct rises to the level of reprehensible, grossly inequitable, or unconscionable conduct required for the doctrine of unclean hands to apply need not be determined, nor do we need to determine the applicability of Unger to these facts. Even if one were to find that Charles had clean hands, he is still not entitled to claim the benefit of the laches doctrine because he has not met *Page 12 
all of the elements. The contest of registration of the judgment is governed by R.C. 3115.44, which provides as follows.
 (A) A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses:
 (1) The issuing tribunal lacked personal jurisdiction over the contesting party;
 (2) The order was obtained by fraud;
 (3) The order has been vacated, suspended, or modified by a later order;
 (4) The issuing tribunal has stayed the order pending appeal;
 (5) There is a defense under the law of this state to the remedy sought;
 (6) Full or partial payment has been made;
 (7) The applicable statute of limitation under [R.C. 3115.41] precludes enforcement of some or all of the arrearages.
R.C. 3115.44. A review of the record indicates that the only claim raised by Charles, who has the burden of proof, is that, under R.C.3115.44(A)(5), he has a defense to the remedy sought via the doctrine of laches.
 Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. * * * To succeed utilizing the doctrine of laches, one must establish: (1) an unreasonable delay or lapse of time in asserting a right; (2) the absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party. * * * Accordingly, a delay in asserting a right does not of itself constitute laches. * * *Page 13 *Instead, the proponent must demonstrate that he or she has been materially prejudiced by the unreasonable and unexplained delay of the person asserting the claim.
Ohio Hosp. Assn. v. Ohio Bur. Of Workers' Comp., 10th
Dist. No. 06AP-471, 2007-Ohio-1499, ¶ 6. No one disputes that there is a valid California judgment requiring Charles to pay Peggy $1,000 per month spousal support until she remarries, she dies, or the order is modified. There also is no dispute that Charles has not made a payment since March 1998, that Peggy is not deceased, that Peggy has not remarried, and that the order has not been modified. Thus, the only question before this court is whether the doctrine of laches applies.
 {¶ 20} In order to successfully invoke the equitable doctrine of laches, a party must demonstrate more than delay in asserting a right. The party must also show that "* * * the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." Smith v. Smith (1959), 168 Ohio St. 447,156 N.E.2d 113, paragraph three of the syllabus; see, also, Kinney v.Mathias (1984), 10 Ohio St.3d 72, 461 N.E.2d 901. Pursuant to the findings of the trial court, there is no dispute that there was a delay between the time the first payment was missed and the time this action was brought. However, Charles must still establish material prejudice.
 {¶ 21} From the time of the divorce decree, Charles had a continuing duty to pay spousal support. "Reliance by the appellant on the non-enforcement of the *Page 14 
entry is misplaced and improper as it did not discharge his obligation to support [his former spouse]." Myers v. Myers, 147 Ohio App.3d 85,2002-Ohio-405, ¶ 25, 768 N.E.2d 1201. When a party is aware or should be aware due to a judgment entry of a continuing duty to support, that party "can neither claim reliance nor material prejudice caused by [the other party's] delay in recovering arrearages." In re Chapa (Aug. 21, 1995), Hancock App. No. 5-95-16, unreported. See also Cochenour v.Bradley (Nov. 8, 1988), Logan App. No. 8-87-13, unreported (stating that any reliance on non-enforcement of an order is misplaced when the duty continues into the future).
 {¶ 22} In Avergis v. Lazzaro (April 1, 1993), Cuyahoga App. No. 62155, unreported, appellee waited fourteen years to prosecute her claim against appellant for his failure to comply with the parties' alimony order. In that case, appellant maintained that there was not merely a delay in bringing the claim. He asserted that if he had known that appellee was going to take this course of action, he would have either timely filed a motion to vacate the order pursuant to Civ.R. 60 or a motion to modify the alimony payments. He further asserted that he would have filed the motion to modify based on his inability to seek employment due to physical disabilities for which he now receives social security payments.
 {¶ 23} The appeals court in Avergis stated "[t]he mere inconvenience of having to meet an existing obligation imposed * * * by an order or judgment of a *Page 15 
court of record at a time later than that specified in such * * * order cannot be called material prejudice." quoting Smith, supra at 457. The appeals court went on to find that "[a]ppellant has not shown how he was materially prejudiced by the delay beyond the assertion of hardship. This assertion is insufficient to rise to the level of prejudice which is required to allow relief through the application of the doctrine of laches." Avergis at *2. It then overruled appellant's assignment of error pertaining to laches.
 {¶ 24} In a similar case involving a 14 ½ year delay in enforcing alimony payments, this court held that "the trial court correctly found that [appellant] did not establish the defense of laches" in a case where "there was no specific showing that [appellant] changed his position to his detriment * * *" McCracken v. McCracken (April 9, 1991), Hancock App. No. 5-90-17, unreported, at *2-3.
 {¶ 25} Here, the magistrate specifically found as follows.
 [Charles] testified that he did not think he had a continuing obligation to follow the order of the Court because neither he nor [Peggy] continued to reside in the State of California. [Charles] did not advise the Court of his move to the State of New Mexico. He did advise his attorney however before leaving the State. He did not advise [Peggy] of his relocation. However, he believed that [Peggy] had remained in contact with his daughter for some time after he left the State of California.
 [Charles] claims damage by [Peggy's] delay in enforcing the order. He claims that he would have tried to reduce the amount of spousal support ordered or reduced the amount of time that he had to pay on the order. He did not attempt to do either of these things before leaving the State of California. *Page 16 
 [Peggy] made several efforts over the years to enforce the order of support. She indicated that she began the process in 1999 when she contacted attorney, Michael Grimes. She also contacted Marion County Child Support Enforcement Agency only to learn that they could not enforce an order of spousal support for her.
June 14, 2006 Entry, 2-3.
 The Court finds that [Charles] deliberately ignored the order from the State of California. His argument that he believed because neither he nor [Peggy] continued to reside in the State of California made the order a nullity is not credible.
 The Court further finds that [Charles] is not materially prejudiced by [Peggy's] delay in asserting her rights under the California order.
Id. at 5. Thus, the trial court found that Charles' reason for not paying the spousal support and relying on the non-enforcement of the order were not credible. The trial court further found that Charles was not materially prejudiced by Peggy's delay.
 {¶ 26} Under Myers, the trial court can rightly conclude that Charles is not materially prejudiced by Peggy's delay in asserting her rights under the California order because it was a continuing obligation of support, not a support order which had been terminated. All of these findings are supported by the record. Given these findings, Charles has failed to meet his burden of proof[1], and the trial court *Page 17 
did not err in holding that the doctrine of laches does not apply, or in denying the motion to vacate the registration of the judgment. Thus, the assignment of error is overruled.
 {¶ 27} The judgment of the Court of Common Pleas of Marion County, Family Division, is affirmed.
Judgment Affirmed.
 ROGERS AND PRESTON, JJ., concur.
[1] Charles having failed to meet his burden of proof, Peggy's delay, if any, as well as Charles' physical illnesses and financial circumstances are irrelevant. Further, until the order is registered, no issue regarding the modification or termination of the order appropriately arises for the trial court's consideration. R.C.3115.40. *Page 1