[Cite as *In re Collins*, 2012-Ohio-5234.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY


IN THE MATTER OF THE
ESTATE OF:                                          CASE NO. 1-11-63

     WILLIAM L. COLLINS, SR.

[LEE TOLBERT, ADMINISTRATOR
OF THE ESTATE OF EASTER I.                          O P I N I O N
SMITH – APPELLANT]


Appeal from Allen County Common Pleas Court
Probate Division
Trial Court No. 2001 ES 213(A)

Judgment Affirmed

Date of Decision:  November 13, 2012


APPEARANCES:

    *David K. Goodin* for Appellant.

    *Jonathan Hollingsworth* for Appellees.

    *Mark A. Van Dyne,* Admr. of Estate.

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Lee Tolbert ("Tolbert") brings this appeal from the judgment of the Court of Common Pleas of Allen County, Probate Division finding William L. Collins, Sr. to be the father of Eddis Jackson fka Eddis Collins, William Collins, Jr., and Jonathon Collins. For the reasons set forth below, the judgment is affirmed.

{¶2} On February 26, 2001, William L. Collins, Sr. ("Collins") died intestate. He was legally married to Easter I. Collins ("Easter") at that time. On April 10, 2001, Easter filed an Application to Relieve the Estate from Administration along with a form identifying herself as the sole known survivor who would inherit under the statutes of descent and distribution. This listing was made despite the fact that Collins' obituary listed Eddis Jackson ("Eddis"), William Collins, Jr. ("William"), and Jonathon Collins ("Jonathon") as his children. The application listed total assets of $254.00 and were distributed to Easter as the surviving spouse.

{¶3} On July 5, 2001, Easter filed a motion to reopen the estate and to convert it to a full administration. This was done to give Easter authority to negotiate a settlement of an asbestos claim. The Standard Probate Form 1.0 again listed Easter as the sole beneficiary of the estate. Easter was appointed administrator of the estate on July 13, 2001.

**{¶4}** On February 11, 2004, Easter, acting as administrator of Collins' estate, filed an application to approve the settlement and to distribute the wrongful death and survival claim on behalf of Collins. No notice was given to any other persons. However, Easter now identified Charles Conley ("Charles") and Fred Conley ("Conley") as nephews of Collins who might have an interest. She claimed that she had no knowledge of the nephews' whereabouts. Eddis, William, and Jonathon were still not identified to the court. The first settlement was approved on April 1, 2004, and the net amount of $13,311.19 was distributed to Easter as the surviving spouse. On April 1, 2005, a second settlement application was filed. The amount of $33,400.96 was distributed to Easter as surviving spouse on April 12, 2005. Both settlement orders were to distribute payments for a wrongful death claim. On June 5, 2008, the trial court, at Easter's request, changed those orders to be allocated as benefits from a survivor claim.

**{¶5}** In June of 2008, a third application to approve a settlement and distribute the funds was filed. Notice by publication was given to the nephews via The Lima News. The trial court approved the distribution of $4,430.24 as a survival claim to Easter. Easter then filed on August 13, 2008, a motion to dispense with further notice to Charles and Fred concerning future settlements. The motion was granted on August 14, 2008.

{¶6} On September 17, 2008, Easter filed her first partial account of the estate with the trial court. The account claimed that the sole amount of $5,530.24 was distributed to her, but not the remaining $46,712.15, even though it had passed through the estate.

{¶7} On January 13, 2009, Easter died. Her obituary identified Eddis, William, and Jonathon as her step-children. On August 14, 2009, Easter's daughter, Gloria Shurelds ("Shurelds") applied to be appointed as the successor administrator of Collins' estate. Letters of authority were issued on August 20, 2009. On November 17, 2009, Eddis filed a motion to remove Shurelds as the successor administrator. Eddis then filed her own motion to be named administrator of Collins' estate on December 23, 2009. By agreement of the parties, Mark Van Dyne ("Van Dyne"), a local attorney, was appointed by the court to serve as a special administrator pending litigation concerning the administration of Collins' estate.

{¶8} Tolbert is the administrator of Easter's estate and the fiancé of Easter's daughter. On behalf of Easter's estate, Tolbert filed a complaint to determine heirship under R.C. 2123.06 on March 19, 2010. An amended complaint was filed on August 10, 2010. The matter proceeded to trial on August 18 and 19, 2011. At the conclusion of the trial, the trial court determined that Collins' heirs at law pursuant to R.C. 2105.06 were Easter, Eddis, William, and

Jonathon. Tolbert appeals from this judgment and raises the following assignments of error.

### First Assignment of Error

**The trial court erred as a matter of law, by not properly applying the entirety of [R.C. 3111] and misapplying [R.C. 3705.23(A)(3)], when determining the parent-child relationship between the Decedent and the Defendants.**

### Second Assignment of Error

**The trial court lacked sufficient evidence to find that a common law marriage existed.**

### Third Assignment of Error

**The trial court erred as a matter of law, by finding that a common law marriage existed after the statute of limitations for proving a civil contract had expired.**

### Fourth Assignment of Error

**Since the Defendants were neither parties to the marriage contract, nor intended third (sic) beneficiaries to the marriage contract, the Defendants are precluded from bringing an action on said contract.**

### Fifth Assignment of Error

**The Defendant's attempt to prove a common law marriage is barred by the equitable defense of laches.**

### Sixth Assignment of Error

**The trial court erred as a matter of law when it denied [Tolbert's] motion for summary judgment.**

In the interests of clarity, the assignments of error will be addressed out of order.

{¶9} In the sixth assignment of error, Tolbert claims that the trial court erred in denying his motion for summary judgment. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. *Franks v. The Lima News* (1996), 109 Ohio App.3d 408, 672 N.E.2d 245. "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issues as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. *Franks,* supra.

{¶10} The short version of the above is that in order for Tolbert to be granted summary judgment, there can be no questions of fact. Tolbert filed his motion for summary judgment on July 29, 2011, less than one month prior to trial. The underlying question in this case is whether Eddis, William, and Jonathon are the children of Collins. Tolbert argued that as a matter of law, Eddis, William, and Jonathon, could not prove that they were the children of Collins for various reasons. However, in their response, Eddis, William, and Jonathon alleged that

they had already been established as the children of Collins and that the arguments presented by Tolbert were affirmative defenses that he had to prove at trial. Eddis, William, and Jonathon, also allege that since Tolbert filed the complaint to determine who is a legal heir, he has waived the right to preclude anyone from presenting evidence that they are heirs. Eddis, William, and Jonathon presented numerous questions of fact to be resolved by the trial court. Therefore, the trial court did not err as a matter of law by denying the motion for summary judgment. The sixth assignment of error is overruled.

{¶11} In the third and fourth assignments of error, Tolbert alleges that Eddis, William, and Jonathon cannot use the common law marriage between Collins and their mother, Mary Collins ("Mary"). Tolbert claims in the third assignment of error that they cannot use the marriage because it has been more than 20 years since the marriage "contract" ended. The fourth assignment of error is based upon a claim that since Eddis, William, and Jonathon were not parties to the civil contract of marriage, they cannot enforce the provisions of it. These arguments might be relevant if Eddis, William, and Jonathon were attempting to enforce the provisions of the marriage contract. They are not. Instead, they are merely using the fact that the common law marriage existed to help prove paternity. The trial court was not asked to enforce any provision of the contract, but merely to recognize the existence of it. This would be no different than asking

the court to recognize a traditional marriage as existing. A marriage contract is not a traditional contract where terms are set forth in writing prior to the parties entering the "contract." Instead, it is a legal relationship requiring a legal proceeding to be terminated. Tolbert has presented no legal basis for excluding the existence of the common law marriage. Thus, the third and fourth assignments of error are overruled.

{¶12} Tolbert alleges in the first assignment of error that the trial court did not correctly apply R.C. 3111 and R.C. 3705.23(A)(3). "The parent and child relationship extends equally to all children and all parents, regardless of the marital status of the parents." R.C. 3111.01. In cases where paternity is in question, the proponent may present all relevant evidence on the issue. R.C. 3111.10. In addition to the methods presented by R.C. 3111 for establishing parentage, there are other methods. *Brookbank v. Gray*, 74 Ohio St.3d 279, 282 (1996), quoting *White v. Randolph*, 59 Ohio St.2d 6 (1979). A natural father may legitimize a formerly illegitimate child by subsequently marrying the mother and acknowledging the child as his. *Id.*

{¶13} Tolbert argues that the alleged children are prohibited from establishing paternity because more than five years have passed since they respectively turned 18 years of age. R.C. 3111.05. However, the trial court determined that the determination of parentage occurred prior to the expiration of

the statute of limitations. In support of its claim, the trial court points to the facts. First, all three of the birth certificates in question list Collins as the father. "A certified copy of a vital record * * * issued in accordance with this section, shall be considered for all purposes the same as the original and shall be prima-facie evidence of the facts stated in it in all courts and places." R.C. 3705.23. Contrary to the argument presented by Tolbert, the statute does not limit which facts the certificate of birth represents as factual to the fact of birth. The only portion that is limited is that the portion for health and medical use shall not be used in the certified copies. R.C. 3705.23(A)(4)(a). All other information, including the identification of the parents, is included in a certified copy making it part of the prima facie evidence. R.C. 3705.23(A)(3). Additionally, there was testimony that Collins and the mother of Eddis, William, and Jonathon held themselves out as married for several years, that Collins claimed the children as his, and that after the death of their mother, the children were raised by Collins as his children without any formal establishment of guardianship.[1] At no time did Collins question whether the children were his biological children or object to the accuracy of the birth certificate. Until this proceeding, no one questioned whether Eddis, William, or Jonathon were the biological children of Collins. The statement that Collins is the father on the three birth certificates is not disputed in

---

[1] No guardianship would be necessary for the children to reside with their biological father after the death of their mother.

any way.[2]   Thus, there is prima facie evidence that paternity was established by agreement of the parties well before the statute of limitation expired.

{¶14}  There is also evidence that Mary and William Collins Sr. considered themselves to be in a common-law marriage.  In addition to the testimony of the children and Collins prior wife that Collins introduced Mary as his wife and the children as his children, there is also the fact that Mary signed Eddis' birth certificate as "Mary Collins."   Mary's death certificate was completed with information provided by Collins and listed Mary's name as Mary Collins.  Mary's obituary, presumably completed by Collins, listed Collins as her husband.  If Mary and Collins were married via common law, then there is evidence that Collins acknowledged the children after the marriage as his and thus legitimized them.  Given all the evidence before it, the trial court correctly applied the law.  The first assignment of error is overruled.

{¶15} The second assignment of error alleges that the trial court's ruling was not supported by sufficient evidence.  Sufficient evidence has been described by the Ohio Supreme Court as "a test of adequacy."  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶11 (quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997)).  The question to be asked by the Appellate Court is that viewing the evidence in a light most favorable to the verdict, is there some competent, credible

---

[2] Tolbert does not argue that Eddis, William, and Jonathon are the children of anyone but Mary and William Collins Sr.  Instead, he argues that they have not established paternity in a timely manner.

evidence to support the verdict. When reviewing the sufficiency of the evidence, the appellate court does not weigh the evidence or consider the credibility of the witnesses. *Id.* To do so would be to review the manifest weight of the evidence. *Id.*

{¶16} A review of the evidence in this case indicates that there is more than sufficient evidence to support the trial court's findings. The evidence established that Jonathon, Eddis, and William were all born to Mary and Collins as set forth in their birth certificates. No question of paternity was ever raised by anyone and no one, including Collins, objected to the designation of Collins as their father. Mary and Collins cohabitated for many years. At some point in time, Mary started going by the name Mary Collins. She signed Eddis' birth certificate using the last name Collins. The reputation of the couple in the community was that they were husband and wife and that they introduced each other in that manner. Upon Mary's death in 1977 from a car accident, Collins provided information for the death certificate indicating that Mary's last name was Collins. Mary's obituary listed her last name as Collins and listed William as her husband. After her death, Collins continued to raise the children as his own and signed all school papers as the parent of the children.

{¶17} William's second wife, Delores Collins ("Delores") indicated that she had always believed that Collins and Mary were married. She testified that

she had been a guest in their home and they were recognized as husband and wife in the community. Delores also testified that Collins acknowledged Eddis, William, and Jonathon as his children and introduced them as such.

{¶18} Upon the death of Collins in 2001, Easter helped draft the obituary. Collins' obituary listed Eddis, William, and Jonathon as his children. Upon Easter's death in 2009, her funeral arrangements and obituary were completed by her children and Eddis. The obituary listed Eddis, William, and Jonathon as step-children. In addition, Collins' death certificate, which had Easter as the informant, listed his name as "William Leon Collins, Sr.". This same name was used to identify Collins in both his obituary and in Easter's obituary. Although Collins' birth certificate was not part of the record, the trial court could reasonably presume that the designation of Sr. as part of Collins' name was not part of his birth name and instead designated that he had a son with the same name. The obituary in fact identifies a "William L. Collins, Jr." as one of his children. Most notably, Tolbert presented no evidence that Collins was not the father of Eddis, William, or Jonathon, or that anyone ever questioned their parentage.

{¶19} The trial court reviewed all of this evidence and made the following conclusions.

> **In summary, William Collins, Sr. was identified on their birth records at the time of their births (over 44 years ago) as the father of Eddis, Jonathon, and William, Jr. That designation was never challenged or questioned from the time of their birth**

**and through the death of both their mother and father. William Collins, Sr. during his lifetime never challenged the fact that he was their father. Mary Alice Collins, the mother and ultimately his wife, during her lifetime never challenged the fact that William, Sr. was their father. If any of those persons had reason to challenge the paternity of William, Sr., they could have done so. The conclusion is that they did not challenge it because none of the principals involved ever questioned it. The birth records of each reflected that William, Sr. was their father, a common law marriage existed between the mother and father, the community recognized and acknowledged him as their father and there was no need or purpose to be served by initiating any action to either challenge or confirm the accuracy of the birth records. It was not challenged until someone outside their immediate family circle (the Administrator of the estate of William's third wife, whom he had married thirteen years after Mary Alice' death) questioned it another nine years after the death of William, Sr. with the filing of the instant Complaint to Determine Heirship. That challenge has not been supported by any evidence to suggest that William, Sr. is not, in fact, their father.**

**The situation was exacerbated in 2001 when William's surviving spouse chose to omit Eddis, Jonathon and William Jr. from Standard Probate Form 1.0 when filed on April 10 and July 5, of that year. She also did not file a Complaint to Determine Heirship to resolve any issues regarding inheritance at that time, leaving Eddis, Jonathon and William, Jr. with no notice that the estate was being administered or their heirship questioned. Easter Collins' omission left them with no knowledge that the estate was even being administered, and no opportunity to assert their claims to a right to participate in the distribution of estate assets. When the Applications to Approve settlement and Distribution of the wrongful death or survivor claims were filed (in 2004 and 2005) they were not identified as possible next of kin or heirs and were therefore not provided notice and an opportunity to assert any claim of a right to participate in the settlement proceeds, even though they had been long recognized to be the children of William, Sr., and even identified as such in his obituary. With the Amended Application to Approve the**

> **Second Wrongful Death Settlement (filed on April 5, 2005)**
> **Easter Collins as fiduciary chose to attempt to provide notice to**
> **two persons she identified as being nephews of William, Sr., but**
> **not the three persons who had been identified (with her input**
> **and assistance) in his obituary as his surviving children.  \* \* \***
>
> \* \* \*
>
> **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**
> **that on the date of his death, the heirs at law of William Collins,**
> **Jr. (sic) under Ohio Revised Code Section 2105.06 were as**
> **follows:**
>
> **A)  his surviving spouse, Easter Irene Collins**
> **B) his daughter, Eddis Jackson**
> **C) his son, William Collins, Jr.**
> **D) his son, Jonathon Collins.**

October 25, 2011, Judgment Entry, 9-11.  The trial court's findings are supported by competent, credible evidence.  Therefore, the evidence is sufficient to support the judgment and the second assignment of error is overruled.

{¶20} In the fifth assignment of error, Tolbert claims that the doctrine of laches prevents Eddis, Jonathon and William from being named heirs.  This court notes that laches is an affirmative defense that must be proven by the party raising it.  Civ.R. 8(C).  In order to prevail  upon a claim of laches, the proponent must prove 1) that the opposing party was unreasonably delayed in pursuing the claim and 2) that the proponent was materially prejudiced by the delay.  *Wiley v. Wiley*, 3d Dist. No. 9-06-34, 2007-Ohio-6423, ¶14.  To invoke the doctrine of laches, the

proponent must have clean hands. *Id.* at ¶15. A delay, in and of itself, does not constitute laches. *Id.* at ¶19.

{¶21} A review of the record in this case shows that the doctrine of laches does not apply. First, the initial petition to relieve the estate from administration was filed in 2001. It listed Collins probate assets as $254. The Standard Probate Form 1.0 only listed Easter as a surviving heir, not the children. Thus, they were given no notice of the administration of the estate. Even if they had been given notice, the entire estate would have been appropriately distributed to Easter under the laws of descent and distribution. However, in 2004 a motion to reopen the estate was filed and a full administration was ordered due to a wrongful death settlement. Standard Probate Form 1.0 was again filed with only Easter's name on it. Thus, again, Eddis, Jonathon and William were given no notice that the estate was once again open and that there were assets to be distributed. The same thing occurred in 2005, except this time, Easter listed Collins' nephews as potential heirs. The children, who were known to Easter at that time, were not listed. The repeated actions of Easter and by her subsequent administrator to deny notice to the children or to request a determination of heirship earlier meant that the children were not given notice of the estate. In fact, the children testified that they learned about their father's estate from a third party after the death of Easter in 2009. That was the first notice of the estate they received. Until that time, they

did not know there was a claim to protect because they believed the matter to be resolved in 2001 soon after Collins' death. The real cause of the delay was not the actions of Eddis, Jonathon, and William, but the actions of Easter and her subsequent administrators, including Tolbert. Since Tolbert does not come to the court with clean hands, he cannot receive the equitable remedy of laches. Therefore, the fifth assignment of error is overruled.

**{¶22}** Having found no error prejudicial to Appellant, the judgment of the Court of Common Pleas of Allen County, Probate Division, is affirmed.

*Judgment Affirmed.*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**