[Cite as *In re Estate of Burdette*, 2016-Ohio-5866.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF | : | |
| THE ESTATE OF | : | Appellate Case No. 26915 |
| | : | |
| I.V. JUNIOR BURDETTE, JR. | : | Court Case No. 10-EST-19 |
| | : | |
| | : | (Appeal from Probate Division, |
| | : | Common Pleas Court) |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2016.

. . . . . . . . . . .

JERRY W. MEADOWS, Atty. Reg. No. 0021262, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459-5318
    Attorney for Appellant, Jackie Marie Burdette (nka Wright)

WILLIAM O. CASS, Jr., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 117, Kettering, Ohio 45429
    Attorney for Appellee, William O. Cass, Jr., Administrator

SCOTT A. ASHELMAN, Atty. Reg. No. 0074325, Scott A. Ashelman, Esq., LLC, Post Office Box 752345, Dayton, Ohio 45475
    Attorney for Appellee, Veronica Burdette-Marshall

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Appellant Jackie Marie Burdette (now known as Wright) contends that the

Montgomery County Probate Court erred when it determined that she was not eligible to inherit from the estate of her father, I. V. Burdette, Jr.   Wright asserts that the trial court erred by failing to accept her birth certificate as prima facie evidence of the parent-child relationship, and that the court's failure to treat her with equal standing to the decedent's other two children violates her rights to equal protection.   Appellee, the Estate of I.V. Burdette, Jr. argues that the trial court correctly concluded that Wright was not entitled to inherit from the estate because Wright did not prove that a parent-child relationship had been legally established through a paternity action or any other statutory proceeding.

**{¶ 2}** We conclude that the trial court did not abuse its discretion in overruling Wright's motion for relief from judgment or err in overruling her motion for summary judgment. The probate court correctly concluded that Wright is not entitled to inherit from the estate of her father. Accordingly, the order of the trial court overruling Wright's motion for relief from judgment is Affirmed.

### I. The Course of Proceedings

**{¶ 3}**   I.V. Burdette, Jr., died intestate on July 18, 2009. An estate was opened in Probate Court, and two of Burdette's children, Veronica and Jerome, were notified as next of kin. Wright was not listed as next of kin, and was not notified of the proceedings.   The trial court approved a settlement of a wrongful death/medical negligence claim in the amount of $135,000, which was divided up between Jerome and Veronica after the payment of medical bills, attorney fees and costs.   A final account was approved and the probate was completed. Fourteen months later, Wright moved for relief from judgment and submitted an affidavit averring that she is a natural born child of Burdette, that she

had not been notified of the estate proceedings, and that she was not aware of the medical negligence claim or its settlement. Attached to the affidavit was Wright's birth certificate, in which Burdette is listed as her father. After all parties briefed the issue, the trial court set the matter for hearing before a magistrate. Prior to the hearing, the parties agreed to genetic testing, and the results were submitted through an agreed entry, reflecting that Wright is the biological child of Burdette. In lieu of a hearing, the parties stipulated to the following facts:

1. Decedent I.V. Burdette died without a will.

2. An estate was opened for the purpose of settling a personal injury claim of Decedent.

3. Jackie Burdette (Jackie) was not listed on Form 1.0.

4. The estate was closed by the Entry Approving and Settling the Account that was filed and signed by this Court on October 18, 2010 and Jackie Burdette (Jackie) was not included in the estate disbursements.

5. Jackie, born September 27, 1963, has established through DNA testing that she is the biological child of the Decedent.

6. Jackie's mother and the Decedent were never married.

7. Jackie was not provided for in the Decedent's will because there was no will.

8. Jackie was never adopted by the Decedent.

9. Jackie was never acknowledged by the Decedent by any statutory acknowledgement proceedings in any Probate or Juvenile Court.

10. Jackie was never designated by the Decedent as his heir at law.

11. The Decedent was never determined to be the father of Jackie in a parentage action and no parentage action was pending at the time of the Decedent's death.

Dkt. #43.

{¶ 4} Both parties moved for summary judgment. In support of her motion, Wright submitted an affidavit in which she avers that throughout her life Burdette acknowledged her as his daughter, and he never denied the relationship. Wright further averred that she lived with Burdette's mother, her paternal grandmother, for several years, and that Burdette often visited her there. These facts were corroborated in a separate affidavit of her uncle, Herbert Burdette, the decedent's brother. In response to Wright's motions, the estate moved to dismiss or to overrule Wright's motion for summary judgment, supported by an affidavit of Veronica, in which she avers that Wright was introduced to her as a step-sister, but that her father never acknowledged Wright as his daughter. Veronica also asserts that Wright only lived with their grandmother for one year during her childhood.

{¶ 5} After Wright filed a responsive memorandum, the matter was submitted for decision without a hearing. A magistrate's decision was entered overruling Wright's motion for summary judgment and her motion for relief from judgment, concluding that Wright is not an heir of the estate of I.V. Burdette, Jr.  Wright filed objections to the magistrate's decision, arguing that the birth certificate should be considered prima facie evidence of paternity, and that Wright is being denied her rights of equal protection. After reviewing the facts and the applicable law, the trial court overruled the objections to the magistrate's decision, concluding that Wright was not a person entitled to inherit from

Burdette's estate and did not have standing to move to vacate the final judgment approving the distribution of the estate assets. The trial court adopted the reasoning articulated in the magistrate's decision, concluding that the birth certificate was insufficient to prove inheritance rights when the undisputed facts establish that a parent-child relationship was not established or acknowledged by a marriage between the biological parents, a provision for Wright in the decedent's will, an adoption, or an acknowledgement in any statutory proceeding.

{¶ 6} From the order of the trial court overruling her motion for relief from judgment and her motion for summary judgment, Wright appeals.

## II. Standard of Review

{¶ 7} When reviewing a summary judgment, we must conduct a de novo review. *Village of Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review requires an "independent review of the trial court's decision without any deference to the trial court's determination." *Jackson v. Internatl. Fiber,* 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft,* 156 Ohio App.3d 37, 2004-Ohio-493, 804 N.E.2d 88, ¶ 27 (3d Dist.).

{¶ 8} When an appeal asserts an error involving an order deciding a motion for relief from judgment, we utilize an abuse of discretion standard of review. "Motions for relief from judgment under Civ.R. 60(B) are addressed to the sound discretion of the trial court, and the court's ruling 'will not be disturbed on appeal absent a showing of abuse of discretion.' " *Jackson v. Hendrickson*, 2d Dist. Montgomery No. 21921, 2008-Ohio-491, ¶ 28, citing *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). " 'Abuse of

discretion' has been defined as an attitude that is unreasonable, arbitrary, or, unconscionable. * * * A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

### III. The Trial Court Correctly Concluded that Wright Was Not an Heir Entitled to Inherit from Burdette's Estate

{¶ 9}  For her First Assignment of Error, Wright asserts:

THE PROBATE COURT ERRED IN FINDING THAT THE BIRTH CERTIFICATE OF APPELLANT DID NOT ESTABLISH BY PRIMA FACIE EVIDENCE THAT APPELLANT WAS A CHILD ENTITLED TO INHERIT FROM DECEDENT

{¶ 10}  Wright argues that the trial court's decision to overrule her motion for summary judgment is based on an erroneous conclusion that Wright's birth certificate is insufficient to establish her inheritance rights. The estate argues that even if the birth certificate does establish that she is the illegitimate child of the decedent, Wright is still not entitled to inherit from her father under R.C. 2105.06 unless paternity is established by one of the procedures established by law.

{¶ 11} Pursuant to R.C. 3705.23(A)(3) and R.C. 3705.23(B)(1), a certified copy of a birth certificate "shall be prima-facie evidence of the facts stated in it in all courts and places." However, " '[p]rima facie evidence' is not conclusive." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 64, 567 N.E.2d 1291 (1991). "The term denotes evidence which will support, but not require, a verdict in favor of the party offering the evidence." *Id.*

Therefore, unless a statute provides otherwise, prima facie evidence creates a rebuttable presumption.

{¶ 12} More importantly, it is not enough for Wright to prove that she is, in fact, Burdette's daughter (which DNA testing appears to have conclusively proved); before Wright may claim the status of heir for purposes of intestate distribution, she must prove either that Burdette acknowledged her as his daughter, or that her status as his daughter was acknowledged publicly through statutory paternity proceedings. This is so because the law of intestate distribution establishes a presumption of how a decedent wishes his estate to be distributed in the absence of a valid will. Once Burdette's paternity of Wright was established or acknowledged, he would know the consequences of his death without a valid will, and could decide to leave Wright with less than an intestate share, or with nothing (or with more, for that matter) should that be his desire, by executing a valid will so providing. *See Byrd v. Trennor*, 157 Ohio App.3d 358, 2004-Ohio-2736, 811 N.E.2d 549, ¶33 (2d Dist.).

{¶ 13} In the case before us, the trial court recognized that the birth certificate issued for Wright in 1963 lists Burdette as her father, but its compliance with the law was questioned. Neither version of the birth certificate proffered by Wright contains her father's signature, nor was a paternity affidavit signed, which is currently required by R.C. 3705.09(F)(2) in order for a father to acknowledge paternity at the time of birth for a child born out of wedlock. The lack of a paternity affidavit or the father's signature on the birth certificate is one factor to consider in evaluating whether the presumption of paternity has been rebutted. The trial court properly considered all the other procedures provided by Ohio law to establish paternity or a parent-child relationship.

{¶ 14} In *Byrd v. Trennor*, *supra*, we identified five ways to establish a parent-child relationship for purposes of inheritance, as follows:

> Illegitimate children can inherit from their fathers if it is shown that affirmative steps were taken by their father, which could include (1) marrying the child's mother; (2) providing for the child in a will; (3) adopting the child; (4) acknowledging the child pursuant to R.C. 2105.18; or (5) designating the child as his heir at law pursuant to R.C. 2105.15. *Birman v. Sproat* (1988), 47 Ohio App.3d 65, 66, 546 N.E.2d 1354, citing *White v. Randolph* (1979), 59 Ohio St.2d 6, 13 O.O.3d 3, 391 N.E.2d 333. Where the parent-child relationship is established prior to the father's death, no differentiation is to be made in the rights of children based upon whether they were born in or out of wedlock. *Id.*

*Id.* at ¶ 28.

{¶ 15} The trial court correctly concluded that based on the undisputed facts, it was not established that Burdette ever married Wright's mother, Burdette did not write a will, he did not adopt Wright, and he did not acknowledge her in the manner prescribed by R.C. 2105.18 or R.C. 5101.314 before those laws were repealed, or by the probate statute, R.C. 2105.15. By considering all of these factors, the court properly concluded that based on Burdette's lack of action during his lifetime to indicate his desire to include Wright as an heir in his estate, any presumption of parentage created by the birth certificate was rebutted for the purpose of inheritance under R.C. 2105.06.

{¶ 16} Wright's reliance on the holding of *In re Estate of Collins,* 3d Dist. Allen No.

1-11-63, 2012-Ohio-5234, is misplaced. In *Collins*, the birth certificate was considered prima facie evidence of a parent-child relationship for purposes of inheritance when the presumption of paternity was not sufficiently rebutted. In *Collins*, the biological parents of the children who were born out of wedlock established a common law marriage by living together and holding themselves out as husband and wife for several years. The children lived with their father, who continued to raise and support them after the biological mother died. *Collins* at ¶ 13. As we discussed in *Byrd*, *supra*, marriage to the mother is one of several legal actions that can be taken by the father to legally acknowledge a parent-child relationship for the purpose of inheritance. In the case before us, there was no evidence that Wright's mother and father ever lived together, or took action that would establish a common law marriage at a time when common law marriage was recognized in Ohio. All of the facts presented to the probate court in the case before us lead to the conclusion that a parent-child relationship for purposes of inheritance was not established and after considering all facts, any presumption of paternity was rebutted.

{¶ 17} Wright's First Assignment of Error is overruled.

### IV. Wright Was Not Denied Equal Protection of the Law

{¶ 18} For her Second Assignment of Error, Wright asserts:

THE PROBATE COURT ERRED IN FAILING TO FIND THAT APPELLANT SHOULD BE TREATED WITH EQUAL STANDING AS THE OTHER TWO CHILDREN LISTED AS NEXT OF KIN IN PROBATE COURT FILINGS, REQUIRED BY PRINCIPLES OF FUNDAMENTAL FAIRNESS AND EQUITY, IN VIOLATION OF HER RIGHTS OF EQUAL

PROTECTION.

{¶ 19} Wright argues that the court erred in overruling her motion for relief from judgment because it prevented her from having an equal opportunity to challenge the inheritance rights of Burdette's other two children. Wright claims that it is fundamentally unfair to require that she prove her inheritance rights, while the court allowed Burdette's other two children, Veronica and Jerome, to share in the distribution of the estate without having to prove a parent-child relationship with the decedent.

{¶ 20} We previously addressed a challenge to the inheritance statute on equal protection grounds in *Byrd, supra*. The facts in *Byrd* are similar to the case before us. Byrd also stipulated that her father and mother were never married, her father never adopted her, he did not leave a will, and he did not designate or acknowledge her as an heir at law. The undisputed facts established that a parent-child relationship was not established prior to the death of Byrd's father. In *Byrd*, we concluded that the inheritance statute in Ohio, R.C. 2105.06, does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, even when inheritance rights of children differ on the basis of whether paternity is or is not established by statutory proceedings, in view of the important state interest in the just and orderly disposition of property at death. We explained:

Due to inherent biological differences between the genders, there is a significant possibility that a father of an illegitimate child may be unaware of that child's existence, whereas it is extremely unlikely that the mother of an illegitimate child will be unaware of the child's existence. When that father dies without having made a will, he is likely to know, generally, that

his estate will pass to his surviving spouse, if any, and to his lineal descendants, although he may well be unaware of the exact proportions that each heir will receive. His conscious or unconscious decision not to make a will is likely to be influenced by the fact that he is content that those persons will receive his property at his death. If there were any of those persons that he did not want to receive a portion of his estate, he would presumably take the trouble to write a will disinheriting that individual. But he cannot be presumed to be content that his property will pass at his death to some person whose relationship to him as his child is unknown to him during his life. By asserting the existence of the father-child relationship after the death of the father, the child deprives the father of the opportunity, during life, to make a will disinheriting the child. In requiring that assertions of the existence of a father-child relationship be made during the life of the father, the intestate succession statute serves the important state interest of enabling the father to make the decision whether to make a will with knowledge of the consequences of that decision.

*Byrd v. Trennor*, 157 Ohio App.3d 358, 2004-Ohio-2736, 811 N.E.2d 549, ¶ 33 (2d Dist.).

{¶ 21} We acknowledge that Wright's equal protection argument is not focused on the difference between the way the inheritance statute treats children born within a marriage or out of wedlock, but rather seeks a reversal on the grounds that she should be given an equal opportunity to challenge the status of Burdette's other two children as heirs, who were not required to substantiate their parent-child relationship with the decedent. The trial court noted that Wright had presented no evidence suggesting that

the two persons who did receive a distribution from Burdette's estate were not entitled to inherit. This question presented by Wright is a procedural issue, resolved by the application of Civ. R. 60(B), as Wright would have been able to challenge the distribution of the estate if the case was reopened. A Civ.R. 60(B) motion for relief from judgment is an appropriate method of reopening an estate to challenge a distribution based on a mistake of fact or law. *See, e.g., In re Estate of Dinsio*, 159 Ohio App. 3d 98, 2004-Ohio-6036, 823 N.E.2d 43 (7th Dist.). To prevail on a motion to vacate a judgment pursuant to Civ.R. 60(B), the movant must demonstrate that: 1) the party has a meritorious claim or defense to present if relief is granted; 2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and 3) the motion is made within a reasonable time, and where the grounds for relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment. We have held that to demonstrate a meritorious claim or defense the movant "must set out operative facts which, if true, constitute a prima facie showing of the claim or defense concerned. A prima facie showing is one which is '[s]ufficient to establish a fact or raise a presumption unless disapproved or rebutted.' " *Smith v. Gilbert*, 2d Dist. Clark No. 2015-CA-61, 2016-Ohio-1099, ¶ 19, quoting *Savage v. Delamore Elizabeth Place,* 2d Dist. Montgomery No. 23147, 2009-Ohio-2772, ¶ 23.

{¶ 22} The probate court correctly concluded that Wright did not establish that she has a meritorious claim to present if relief was granted. As explained above, the trial court correctly concluded that Wright was not an established heir, and no evidence was proffered to demonstrate any grounds for a challenge to the status of any other heir. Therefore, the probate court did not abuse its discretion by denying the motion for relief from judgment. Wright's Second Assignment of Error is overruled.

## V. Conclusion

**{¶ 23}**  Both assignments of error having been overruled, the order of the probate court overruling Wright's motion for relief from judgment, and for summary judgment, is Affirmed.

. . . . . . . . . . . .


FROELICH and HALL, JJ., concur.


Copies mailed to:

Jerry A. Meadows
William O. Cass, Jr.
Scott A. Ashelman
John C. Ferneding & Associates, Inc.
The Ohio Casualty Insurance Company
Hon. Alice O. McCollum