[Cite as *In re Estate of Troutman*, 2026-Ohio-855.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF ROGER TROUTMAN, DECEASED | : | C.A. No. 30573 |
|  | : |  |
| ---------------------------------------------------- ------------------------------- | : | Trial Court Case Nos. 2021 EST 01569; 2001 MSC 335631 |
|  | : |  |
| IN THE MATTER OF THE HEIRSHIP ACTION OF ROGER TROUTMAN, DECEASED | : | (Appeal from Common Pleas Court- Probate Division) |
|  | : |  |
|  | : | **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 13, 2026, the judgment of the trial court is reversed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, JUDGE

LEWIS, P.J., and TUCKER, J., concur.

**OPINION**

MARK M. TURNER and TAS J. NADAS, Attorneys for Appellant
KELVIN L. BODDIE, Attorney for Appellee Larry Gates

EPLEY, J.

{¶ 1} Brent Lynch, an heir of Roger Troutman, appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which granted the motion of Larry Gates, the current administrator of the estate of Roger Troutman, to reconsider and vacate the April 15, 2003 judgment determining heirship. For the following reasons, the trial court's judgment is reversed.

### I. Facts and Procedural History

{¶ 2} Roger Troutman was a member of Zapp, a funk band, with three of his brothers. On April 25, 1999, Troutman was shot and killed by his brother, Larry, who died by suicide soon after the shooting. Troutman died intestate.

{¶ 3} Rufus Troutman, another brother of Troutman, was appointed the administrator of Troutman's estate in August 1999. Montgomery C.P. No. 1999 EST 327337. Several documents from Case No. 1999 EST 327337 are contained in the record. We take judicial notice of additional filings in that case. *State ex rel. Harris v. Capizzi*, 2022-Ohio-3661, ¶ 18 (2d Dist.) ("It is now well established that we may take judicial notice of judicial opinions and public records accessible through the Internet.").

{¶ 4} On June 19, 2001, Rufus filed a petition to determine heirship in the probate court, identifying 12 potential children of Troutman, including Roger Troutman Lynch Jr. (then 31 years old). Montgomery C.P. No. 2001 MSC 385631. In the petition, Rufus indicated his belief that Troutman had never married and had left no surviving spouse. He asked the

2

court to determine Troutman's lawful heirs and to establish their respective interests in Troutman's estate. The trial court appointed guardians ad litem for the six minors named as defendants in the heirship action. On September 24, 2002, the court held a hearing on the petition, during which the administrator of Troutman's estate, the mother of three potential heirs, and the guardians ad litem apparently participated. A transcript of the proceeding is not part of the record.

{¶ 5} On January 22, 2003, while the heirship action remained pending, Roger Lynch died intestate in Saint Paul, Minnesota. An estate for Roger Lynch was not immediately opened.

{¶ 6} On April 15, 2003, the trial court found that 12 individuals were Roger Troutman's children and heirs at law. The court noted that six of those individuals were minors, three individuals were adults, two individuals were adults but had been minors when Troutman died, and Roger Lynch was an adult but "now deceased." The trial court further found that (1) "Roger Troutman died without a surviving spouse" and (2) "no children of Roger Troutman have died leaving issue."

{¶ 7} Troutman's estate has remained open for more than 20 years. During that time, the estate has been involved in various related proceedings. *See, e.g.*, Montgomery C.P. No. 2001 CV 02153 (wrongful death action against the estate of Larry Troutman); Montgomery C.P. No. 2008 MSC 00081 (royalties); and Montgomery C.P. No. 2020 MSC 00352 (concealment of assets). In 2007, the trial court approved a settlement of a wrongful death action against Larry's estate, which provided that Troutman's estate would receive two-thirds of the value of Larry's estate. No specific amount was set.

{¶ 8} On January 9, 2012, Rufus filed an application to approve settlement and distribution of wrongful death and survival claims. The application indicated that a settlement

3

of $400,000 had been reached with Larry's estate, and it requested allocation of $287,691.48 to the wrongful death action and $31,731.31 to the survival action; the balance of $80,577.21 represented attorney fees and fiduciary fees. The application further requested that the wrongful death proceeds to be distributed in 13 equal shares of $22,130.11 to Troutman's 11 living children, to the estate of Roger Lynch, and to Troutman's mother, Ruth. Several objections were filed, including an objection to the proposed distribution to the estate of Roger Lynch on the ground that an estate for him had not been opened.

{¶ 9} On January 31, 2013, the magistrate issued a decision on the application to approve the settlement. The magistrate determined that Troutman's 11 living children, the estate of Roger Lynch, and Ruth Troutman were all wrongful death beneficiaries. It noted that "Decedent died on April 25, 1999. Accordingly, the status of the Proposed Beneficiaries was fixed on that date. On April 25, 1999, each of the Proposed Beneficiaries was either a living parent or living child of Decedent." The magistrate further found that all settlement proceeds should be applied to the wrongful death action and none to a survival action. The magistrate ordered $300,000 in wrongful death proceeds be evenly divided among the 13 beneficiaries (only $300,000 of the $400,000 received from Larry's estate was available for distribution at that time) and that they each receive 1/13 of the net wrongful death proceeds for any subsequent wrongful death settlement application. The probate judge adopted the magistrate's decision on March 1, 2013.

{¶ 10} In July 2013, 10 of the 13 wrongful death beneficiaries received a distribution of $14,384.60; the estate of Roger Lynch and Troutman's two incarcerated children did not receive distributions. In April 2014, the trial court authorized the administrator to distribute funds to the two incarcerated beneficiaries. In a separate decision, the administrator was

4

authorized to distribute the remaining $100,000 of the wrongful death proceeds to the beneficiaries. Between March 2013 and October 2018, the 11 living children of Roger Troutman and Troutman's mother each received distributions totaling $33,723.98. The estate of Roger Lynch did not receive any distributions.

{¶ 11} In 2017, Larry Gates, another heir of Troutman, raised questions about Rufus's handling of the estate administration.

{¶ 12} On October 30, 2018, Brenda Lynch, the mother of Roger Lynch, moved for distribution of $33,723.98 in wrongful death proceeds, plus 1/12 of any of Troutman's estate assets, to Roger Lynch's estate. Brenda indicated that she had been appointed as special administrator of the estate of Roger Lynch on August 2, 2018, and that the Ramsey County District Court in Minnesota had previously found that she was the sole heir of his estate. Brenda further pointed to the April 15, 2003 judgment in the heirship action, asserting that the court had held that Roger Lynch had died without children. Rufus opposed the motion, stating in part that Brenda had revealed in 2014 that Roger Lynch had two children, that Brenda had said that she did not want to see the mother of those children get any money, and that Brenda had apparently made misrepresentations to the Minnesota court about her son's heirs.

{¶ 13} On May 6, 2019, the magistrate denied Brenda's request for a distribution. He noted that "when Roger Troutman died on April 25, 1999 Roger Troutman Lynch, Jr, was alive and survived the requisite time to be considered an heir of Roger Troutman." However, he concluded that distribution was not appropriate as no estate had been opened for Roger Lynch. The magistrate stated, "[T]he only person who can properly administer the assets belonging to the probate estate of Roger Troutman Lynch Jr., would be the duly appointed fiduciary appointed, in the State of Minnesota, for the now-deceased Roger Troutman Lynch,

5

Jr." The magistrate further found that the probate court in Minnesota was the appropriate venue to adjudicate claims against Lynch's estate.

**{¶ 14}** Brenda renewed her motion for distribution on September 23, 2019. On February 27, 2020, Rufus again opposed the motion, this time submitting a birth certificate for Alexis Lynch, listing "Roger Troutman Lynch" as her father. Rufus asked the trial court to find "that Roger Troutman Lynch, deceased – an heir of the Estate of Roger Troutman – was the father of Alexis Alijai Lynch, deceased, and that the motion of Brenda Lynch should therefore be denied." The administrator further asked the court to order Troutman's estate to obtain a birth certificate for another potential child of Roger Lynch "in order to properly establish the heirs of the Estate." These motions remained pending for several years but were ultimately denied. *See* Montgomery C.P. No. 2021 EST 001569, Entry and Order Related to Roger Lynch's Motion to Compel Distribution (Nov. 19, 2024).

**{¶ 15}** In 2021, Rufus withdrew as administrator of Troutman's estate, and the matter proceeded with Gates as administrator under a separate case number. *See* Montgomery C.P. Nos. 1999 EST 327337, 2021 EST 01569.

**{¶ 16}** In March 2022, Gates filed an additional application to approve settlement and distribution of wrongful death claims in the amount of $269,993.65, in which the wrongful death beneficiaries would each receive $20,604.45.

**{¶ 17}** In November 2022, Brenda again sought distribution of assets from Troutman's estate to which Roger Lynch's estate was entitled. In his opposition memorandum, Gates recognized that Roger Lynch was an heir to Troutman's estate, but he indicated that "Roger Lynch's passing on January 22, 2003, has created an issue as it relates to who is entitled to receive his inheritance." Gates asked the trial court to deny the

6

motion or set a hearing so that the administrator could "investigate the issue of how much is owed to Roger Lynch's estate and who said amount should be distributed to."

{¶ 18} On December 19, 2022, the trial court overruled Brenda's motion. The trial court stated that Brenda had cited no decision finding that the estate of Roger Lynch was an heir to the estate of Roger Troutman and that Lynch's estate was to be given equal distributions with the other heirs. It further stated that there was "apparently, a question as to the identity of the heirs at law of Roger Lynch Troutman [sic] which impacts the nature and amount of any distribution." The court then focused on the fact that full distributions had not been made to other heirs and that Brenda did not support her claim regarding the amount of distribution with reference to distributions to other heirs.

{¶ 19} On October 6, 2023, the trial court approved an application to approve settlements regarding wrongful death proceeds and estate assets improperly held by others.

{¶ 20} Brenda filed another motion to compel distribution in October 2024, which she amended in November 2024. She sought distribution of wrongful death settlement proceeds of $33,723.98 (per the March 1, 2013 decision), $55,982.31 in wrongful death proceeds (per the October 6, 2023 decision), and $61,058.57 in estate asset settlement proceeds (per the October 6, 2023 decision).

{¶ 21} Gates responded on November 12, 2024, stating that Roger Lynch had two daughters, with whom he had lived until his death in 2003, and that the girls lived with Brenda for more than a year after his death. He emphasized Brenda's knowledge of the existence of Roger's daughters and her apparent fraud on the Minnesota court in securing a determination of descent and distribution that she was Roger Lynch's sole heir. Gates argued that the Minnesota court's determination of descent and distribution was a void judgment due to Brenda's fraud and thus unenforceable in Ohio. Gates asked the trial court

7

to employ its equitable powers and vacate "all orders finding that Roger Lynch had no children; to deny Brenda Lynch's Amended Motion to Compel Distribution; and to Grant Administrator Larry Gates the authority to distribute Roger Lynch's share of the estate and wrongful death funds to [Roger's surviving daughter]." In the alternative, Gates asked the trial court to hold a hearing to determine the rightful heirs of Roger Lynch's estate.

{¶ 22} The trial court overruled the motion because not all interested parties were served but allowed it to be refiled. Brenda promptly refiled her motion to compel distribution.

{¶ 23} On January 9, 2025, the trial court set a hearing on Brenda's motion for March 11, 2025. It ordered Brenda, Gates, and any other interested parties to appear. Brenda asked to be excused from appearing in person due to health-related issues. The court denied that motion.

{¶ 24} On March 27, 2025, the trial court denied Brenda's motion to compel after she failed to appear for the hearing. In its ruling, the court discussed relevant case law on (1) whether the April 15, 2003 entry determining heirship was void or voidable, (2) the status of Roger Lynch's minor daughters during the heirship action, and (3) whether the April 15, 2003 entry was a final appealable order. However, the court declined to decide any of those issues. For ease of reviewing future motions, the court sua sponte consolidated the 2001 heirship case and the 2021 estate case.

{¶ 25} Brenda appealed from the March 27, 2025 judgment, but we dismissed the appeal for lack of a final appealable order. *In re Estate of Roger Troutman*, No. 30461 (2d Dist. June 2, 2025).

{¶ 26} On April 9, 2025, Gates filed a motion to reconsider and vacate the April 15, 2003 entry determining heirship. He asserted that the judgment was void as a matter of law, as Roger Lynch's children were unrepresented and did not receive service of the entry, in

8

violation of their right to due process. He further noted that there was no compliance with Civ.R. 58(B) and App.R. 4(A).

{¶ 27} On July 17, 2025, the trial court granted the motion to reconsider and vacate the April 15, 2003 judgment. It reasoned, in its entirety:

> After reviewing the pleadings and for good cause, the Court hereby GRANTS Larry Gates' Motion to Reconsider and Vacate April 15, 2003 Entry Determining Heirship, filed by Larry Gates, Administrator, filed April 9, 2024. The Court will set a scheduling conference where an in-person evidentiary hearing shall be set regarding the Heirship action and a final determination of heirs of the Estate o[f] Roger Troutman will be decided.

The court also ruled on other motions that are not at issue here. The trial court's July 17, 2025 judgment did not affect the court's January 31, 2013 judgment specifying the wrongful death beneficiaries (which included the estate of Roger Lynch) and establishing their respective shares of settlement proceeds.

{¶ 28} Brent Lynch, one of Troutman's heirs, appeals from the trial court's vacation of the April 15, 2003 judgment. He raises three assignments of error, which state:

> 1. The trial court abused its discretion by granting the motion to reconsider and vacate a final probate determination without proper legal basis.
>
> 2. The Ohio trial court lacked subject matter jurisdiction to determine the heirs of a non-resident decedent.
>
> 3. Roger Lynch's inheritance rights vested when he survived the decedent by 120 hours as required by O.R.C. § 2105.02, and the trial court improperly attempted to divest his estate of those vested rights.

We address Brent's arguments in a manner that facilitates our analysis.

9

## II. Validity of the April 15, 2003 Judgment

{¶ 29} Before turning to Brent's specific assignments of error, we must determine whether the April 15, 2003 judgment was void or potentially voidable.

{¶ 30} The Ohio Supreme Court "has long recognized the finality of a decision rendered by a court that had both subject-matter jurisdiction over the case and personal jurisdiction over the parties." *State v. Henderson*, 2020-Ohio-4784, ¶ 16. If the court had both, it is "altogether immaterial how grossly irregular, or manifestly erroneous, its proceedings may have been; its final order cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached." *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, 498 (1854); *see Henderson* at ¶ 16. "And when a specific action is within a court's subject-matter jurisdiction, any error in the exercise of that jurisdiction renders the court's judgment voidable, not void." *State v. Harper*, 2020-Ohio-2913, ¶ 26.

### A. Subject Matter Jurisdiction

{¶ 31} "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *Corder v. Ohio Edison Co.*, 2020-Ohio-5220, ¶ 14. "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 18, citing *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 19. Instead, "the focus is on whether the forum itself is competent to hear the controversy." *Harper* at ¶ 23.

{¶ 32} Ohio's courts of common pleas and their divisions have "original jurisdiction over all justiciable matters . . . as may be provided by law." Ohio Const., art. IV, § 4(B); *see also* Ohio Const., art. IV, § 4(C) (probate divisions). Throughout the proceedings regarding Troutman's estate, the probate court has had exclusive jurisdiction to "direct and control the conduct and settle the accounts of executors and administrators and order the distribution

of estates." R.C. 2101.24(A)(1)(c). Moreover, when property passes by the laws of intestate succession, "proceedings may be had in the probate court to determine the persons entitled to such property." R.C. 2123.01.

{¶ 33} Rufus Troutman, as administrator of Troutman's estate, filed a verified petition to determine heirship under R.C. Ch. 2123, seeking a determination of Troutman's heirs under the descent and distribution statute, R.C. 2105.06. In 1999, an heirship proceeding could be initiated by filing a verified petition in the probate court of the county where the estate was being administered. Former R.C. 2123.02, amended by 2011 Am.Sub.S.B. No. 124 (changing petition to complaint). The probate court had subject matter jurisdiction over the heirship action.

### B. Personal Jurisdiction

{¶ 34} To render a valid judgment, a trial court also must have personal jurisdiction over the defendant(s). *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). "Personal jurisdiction may only be acquired by service of process upon the defendant, the voluntary appearance of the defendant or his legal representative, or by an appearance that waives service." *Discover Bank v. Wells*, 2018-Ohio-4637, ¶ 11 (2d Dist.), citing *Maryhew* at 156-157.

{¶ 35} The petition to determine heirship named Troutman's 12 purported children as defendants. Roger Lynch was a living adult when the petition was filed, and he was served with the complaint and summons by certified mail at an address in Saint Paul, Minnesota. The other named defendants were served either by certified mail or, when the certified mail was returned unclaimed, by ordinary mail. Unknown heirs were served by publication. None of the 12 named defendants has claimed that the trial court lacked personal jurisdiction over him or her.

### C. Due Process Claims

{¶ 36} Gates asserts that Roger Lynch's daughters were unrepresented minors who were deprived of due process and equal protection rights that the other minors involved in the action received. He argues that the trial court determined Roger's daughter's rights without giving them an opportunity to participate. He further contends that the probate court would have appointed guardians ad litem for Roger's children had it been made aware of them before rendering the April 15, 2003 judgment. We disagree.

{¶ 37} The right to inherit by intestate succession is determined by the statutes in force when the decedent died. *In re Stephenson's Estate*, 75 N.E.2d 834 (1946). In 1999, R.C. 2105.06 provided, in relevant part, and still provides today:

> When a person dies intestate having title or right to any personal property, or to any real property or inheritance, in this state, the personal property shall be distributed, and the real property or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:
>
> (A) If there is no surviving spouse, to the children of the intestate or their lineal descendants, per stirpes;

{¶ 38} In determining whether Troutman had a surviving spouse, living children, or lineal descendants of children who predeceased him, the probate court was required to evaluate the circumstances at the time of the decedent's death. *Stevens v. Radey*, 2008-Ohio-291 (R.C. 2105.06 should be applied at decedent's date of death when determining who has the right to residue of testamentary trust through intestate succession). To be an heir, an individual must have survived the decedent by the requisite period of time. *See* former R.C. 2105.21 (survival of 30 days after decedent's death required to inherit from

decedent's estate), repealed in 2002 Am.Sub.H.B. No. 242; R.C. 2105.32 (establishing a 120-hour survivorship period).

{¶ 39} The court conducted a hearing on the heirship petition in September 2002, while Roger Lynch was still alive. Roger had the opportunity to participate in the hearing, but he apparently did not do so. Although Roger died before the trial court rendered its decision, Roger was provided the same opportunity as his siblings to present evidence or arguments before the trial court entered its ruling. The April 15, 2003 judgment resolved the heirship petition, finding that all the named defendants were Troutman's heirs. There appears to be no dispute that Roger Lynch was properly found to be a child of Roger Troutman.

{¶ 40} The probate court would have been concerned with Troutman's lineal grandchildren only if one or more of Troutman's children had predeceased him. None of them did. Because Roger Lynch survived Troutman, Roger's lineal descendants were not prospective heirs of Troutman, and they had no due process right to be served with the petition or to participate at the hearing. Unlike Roger's minor *siblings*, the trial court would have had no reason to appoint guardians ad litem for Roger's purported daughters (Troutman's granddaughters) in the heirship action regarding Troutman's estate.

{¶ 41} In the same vein, we disagree with Gates that the trial court found in its April 15, 2003 judgment that Roger Lynch had died without lineal descendants. To apply R.C. 2105.06 in Rufus's heirship action, the trial court was required to determine whether Troutman had a surviving spouse, who Troutman's children were, and whether any of his children had predeceased him (or died within 30 days of his death) leaving lineal descendants. The trial court's April 15, 2003 entry found that Troutman had 12 children who were his heirs and no surviving spouse. For Roger Lynch, the court indicated that he was an adult but was "now deceased." The record was clear and it remains undisputed that

13

Roger was alive when Troutman died and when the heirship action was filed in June 2001, more than two years later. Thus, after Roger died, his estate was the proper party to receive his inheritance.

{¶ 42} Considering that the trial court was making findings for purposes of R.C. 2105.06(A), it is apparent that the trial court was referring to the circumstances *at the time of Troutman's death* when it found that "no children of Roger Troutman have died leaving issue." Although this context appears to have been lost with the passage of time (and at Brenda's urging), the trial court simply meant that none of Troutman's 12 children had predeceased him or had died within 30 days of his death leaving lineal descendants. Whether Roger Lynch had lineal descendants when he died in 2003 was irrelevant to the trial court's heirship determination regarding Roger Troutman, and the April 15, 2003 judgment is not reasonably construed as making a finding on that issue. Accordingly, any rights that Roger Lynch's purported daughters may have to Roger Lynch's estate were not affected by the April 15, 2003 judgment.

{¶ 43} Gates further asserts that the April 15, 2003 judgment was void because neither Roger's estate nor his daughters were served with the judgment. An heirship action is governed by Ohio's Rules of Civil Procedure. R.C. 2123.03. Of relevance here, Civ.R. 58(B) provides:

> When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ.R. 5(B) and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance

14

docket, the service is complete. *The failure of the clerk to serve notice does not affect the validity of the judgment* or the running of the time for appeal except as provided in App.R. 4(A).

(Emphasis added.). Under App.R. 4(A), if the clerk fails to complete service within the three-day period prescribed in Civ.R. 58(B), the 30-day period in which to file an appeal does not begin to run until the clerk actually completes service.

{¶ 44} Roger Lynch did not respond to the petition to determine heirship, and he did not otherwise appear in the action. Because he failed to appear, the clerk was not required to send him notice of the judgment. Even if notice were required, the clerk's failure to serve notice would not have affected the validity of the judgment. Civ.R. 58(B); *McManus v. Anderson*, 2025-Ohio-2542, ¶ 24 (2d Dist.).

{¶ 45} The April 15, 2003 entry was a valid final judgment, which was potentially voidable, not void.

### III. Vacation and Reconsideration of the April 15, 2003 Judgment

{¶ 46} Brent's first assignment of error challenges the trial court's vacation of the April 15, 2003 judgment without providing a legal basis. He asserts that April 15, 2003 entry was a valid final judgment, which could not be reconsidered and could not be vacated without compliance with Civ.R. 60(B). In response, Gates acknowledges that the motion to vacate was not brought Civ.R. 60(B), but he claims that the entry was void and could be vacated under the trial court's inherent authority.

{¶ 47} Civ.R. 60(B) permits a court to relieve a party from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) satisfaction, release, discharge, reversal, or vacation of the judgment, or if it is no longer equitable that the judgment should

15

have prospective application; or (5) any other reason justifying relief from the judgment. Civ.R. 60(B)(1)-(5). The Rule "represents an attempt to strike a balance between conflicting principles that litigation must be brought to an end and that justice should be done." *Chapman v. Chapman*, 2006-Ohio-2328, ¶ 13 (2d Dist.). We have held that a Civ.R. 60(B) motion for relief from judgment is an appropriate method of reopening an estate to challenge a distribution based on a mistake of fact or law. *In re Estate of Burdette*, 2016-Ohio-5866, ¶ 21 (2d Dist.).

**{¶ 48}** To prevail on a Civ.R. 60(B) motion, the moving party must establish: (1) a meritorious claim or defense to present if the court grants relief; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion was filed within a reasonable time and, when relying on a ground for relief set forth in Civ.R. 60(B)(1), (2), or (3), it was filed not more than one year after the judgment was entered. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. Each of these elements must be met. *Molnar-Satterfield v. Molnar*, 2021-Ohio-2698, ¶ 13 (2d Dist.). We review a trial court's ruling on a Civ.R. 60(B) motion for an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987).

**{¶ 49}** In contrast, when a judgment is void, the trial court can act under its inherent authority to vacate the void judgment. *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus ("The authority to vacate a void judgment is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts."). The probate court may vacate certain judgments "for good cause shown," *see* R.C. 2109.35(B), for example, but Gates has not relied upon any statute as the basis for his motion.

**{¶ 50}** Gates acknowledges that he did not seek to vacate the April 15, 2003 judgment under Civ.R. 60 and that he had relied solely on the court's inherent authority to

16

vacate a void judgment. The trial court also appears to have relied on its inherent authority; it provided no rationale or legal framework for its decision to grant Gates's motion to vacate. However, the April 15, 2003 judgment was not void. Because Gates did not establish, or even attempt to establish, that he was entitled to relief from judgment under Civ.R. 60(B), the trial court abused its discretion in vacating its April 15, 2003 judgment.

**{¶ 51}** Brent further asserts that the trial court could not reconsider its April 15, 2003 judgment. We agree. A trial court "retains jurisdiction to reconsider its interlocutory orders, either sua sponte or upon motion, any time before it enters final judgment in the case." *Nilavar v. Osborn*, 137 Ohio App.3d 469, 499 (2d Dist. 2000); *Union Sav. Bank v. Washington*, 2019-Ohio-3203, ¶ 31 (2d Dist.). However, the Ohio Rules of Civil Procedure do not permit a trial court to reconsider its valid final judgments. *Tucker v. Pope*, 2010-Ohio-995, ¶ 25 (2d Dist.); *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378 (1981), paragraph one of the syllabus. Accordingly, we have consistently held that any order granting a motion for reconsideration of a final order or judgment is a legal nullity. *E.g., Richart v. Greenlee*, 2024-Ohio-4509, ¶ 28 (2d Dist.); *Tucker* at ¶ 25; *Payne v. Wilberforce Univ.*, 2004-Ohio-4055, ¶ 7 (2d Dist.).

**{¶ 52}** Brent's first assignment of error is sustained.

### IV. Brent's Additional Claims

**{¶ 53}** In his second assignment of error, Brent claims that the trial court lacks jurisdiction to determine the heirs of Roger Lynch, who was a resident of Minnesota. He argues that, under R.C. 2113.01, a probate court has jurisdiction to administer the estate of an intestate decedent only if the decedent were an Ohio resident, which Lynch was not, and that Roger Lynch had no property in Ohio requiring ancillary administration under

R.C. 2129.04. Brent asserts that jurisdiction over Troutman's estate did not confer jurisdiction to determine the heirs of Roger Lynch's estate.

{¶ 54} In its July 17, 2025 judgment, the trial court indicated that it would hold a scheduling conference during which an in-person evidentiary hearing would be scheduled regarding the heirship action so that a final determination of Troutman's heirs could be decided. Because the trial court has not entered any judgment specifying the heirs of Roger Lynch, the question of whether the court has the authority to do so is not ripe for review.

{¶ 55} Brent's third assignment of error asserts that the trial court improperly attempted to divest Roger Lynch of his inheritance rights by vacating the April 15, 2003 judgment. Because we conclude that the trial court erred in vacating the April 15, 2003 judgment, this assignment of error is moot.

### V. Conclusion

{¶ 56} The trial court's judgment is reversed.

. . . . . . . . . . . . .

LEWIS, P.J., and TUCKER, J., concur.

18